# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL RISS, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>BUCKEYE PARTNERS, L.P., CLARK C. SMITH, PIETER BAKKER, BARBARA M. BAUMANN, BARBARA J. DUGANIER, JOSEPH A. LASALA, JR., MARK C. MCKINLEY, LARRY C. PAYNE, OLIVER G. RICHARD, III, FRANK S. SOWINSKI, and MARTIN A. WHITE,<br><br>Defendants. | Case No.<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Michael Riss ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Class Action Complaint:

## NATURE OF THE ACTION

1.  This is a unitholder class action brought by Plaintiff on behalf of himself and all other public unitholders of Buckeye Partners, L.P. ("Buckeye" or the "Company") against Buckeye and the members of Buckeye's Board of Directors (the "Board" or the "Individual Defendants"), for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction,

1

pursuant to which Buckeye will be acquired by IFM Investors Pty Ltd ("IFM"), through Hercules Intermediate Holdings LLC ("Parent") and Parent's wholly-owned subsidiary Hercules Merger Sub LLC ("Merger Sub") (the "Proposed Transaction").

2. On May 10, 2019, Buckeye and IFM issued a joint press release announcing they had entered into an Agreement and Plan of Merger dated May 10, 2019 ("Merger Agreement") to sell Buckeye to IFM. Pursuant to the terms of the Merger Agreement, each issued and outstanding unit of Buckeye representing limited partner interests in the Company will be converted into the right to receive $41.50 in cash (the "Merger Consideration").

3. On June 25, 2019, in order to convince Buckeye's public unitholders to vote in favor of the Proposed Transaction, defendants filed a Definitive Proxy Statement (the "Proxy Statement") with the SEC, which omits or misrepresents material information concerning the Proposed Transaction.

4. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin the unitholder vote on the Proposed Transaction, unless and until the material information discussed below is disclosed to Buckeye unitholders.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of

jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**PARTIES**

8. Plaintiff is, and has been at all times relevant hereto, a continuous unitholder of Buckeye.

9. Defendant Buckeye is a Delaware limited partnership and a publicly traded Delaware master limited partnership with its principal executive offices located at One Greenway Plaza, Suite 600, Houston, Texas 77046. The Company's partnership units representing limited partner interests trade on the New York Stock Exchange under the ticker symbol "BPL."

10. Defendant Clark C. Smith is, and has been at all relevant times, Chairman of the Board, Chief Executive Officer of the general partner of Buckeye, Buckeye GP LLC ("Buckeye GP"), and President of Buckeye GP.

11. Defendant Pieter Bakker is, and has been at all relevant times, a director of Buckeye GP.

12. Defendant Barbara M. Baumann is, and has been at all relevant times, a director of Buckeye GP.

13. Defendant Barbara J. Duganier is, and has been at all relevant times, a director of Buckeye GP.

14. Defendant Joseph A. LaSala, Jr. is, and has been at all relevant times, a director of Buckeye GP.

15. Defendant Mark C. McKinley is, and has been at all relevant times, a director of

Buckeye GP.

16. Defendant Larry C. Payne is, and has been at all relevant times, a director of Buckeye GP.

17. Defendant Oliver G. Richard, III is, and has been at all relevant times, a director of Buckeye GP.

18. Defendant Frank S. Sowinski is, and has been at all relevant times, a director of Buckeye GP.

19. Defendant Martin A. White is, and has been at all relevant times, a director of Buckeye GP.

20. Defendants identified in paragraphs 10 to 19 are collectively referred to herein as the "Board" or the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Buckeye common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

22. This action is properly maintainable as a class action.

23. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of June 24, 2019, there were 153,920,704 Company units outstanding. All members of the Class may be identified from records maintained by Buckeye or its transfer agent and may be notified

of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

24. Questions of law and fact are common to the Class, including, among others, whether defendants violated the Exchange Act and whether defendants will irreparably harm Plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

25. Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

26. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

27. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company and Proposed Transaction

28. Buckeye is one of the largest independent liquid petroleum products pipeline operators in the United States in terms of volumes delivered, with approximately 6,000 miles of pipeline. Buckeye also uses its service expertise to operate and/or maintain third-party pipelines and perform certain engineering and construction services for its customers. Buckeye's global terminal network comprises more than 115 liquid petroleum products terminals with aggregate tank capacity of over 118 million barrels across its portfolio of pipelines, inland terminals and

marine terminals located primarily in the East Coast, Midwest and Gulf Coast regions of the United States as well as in the Caribbean. In November 2018, Buckeye executed a definitive agreement to sell its 50% equity interest in VTTI B.V. ("VTTI") to Vitol Investment Partnership II Ltd and IFM for approximately $975.0 million. On January 17, 2019, Buckeye announced the sale closed.

29.     IFM is an Australian investment management company that specializes in debt investments, infrastructure, listed equities and private equity. As of March 31, 2019, IFM had approximately $90 billion of funds under management.

30.     On May 10, 2019, the Board caused the Company to enter into the Merger Agreement. Pursuant to the terms of the Merger Agreement, Buckeye's unitholders will receive $41.50 in cash for each Buckeye common unit they own

31.     Also on May 10, 2019 Buckeye and IFM issued a joint press release announcing the Proposed Transaction, which stated in relevant part:

> HOUSTON and NEW YORK – May 10, 2019 – IFM Investors and Buckeye Partners, L.P. (NYSE: BPL) today announced a definitive agreement ("Agreement") under which the IFM Global Infrastructure Fund will acquire all of the outstanding public common units of Buckeye for $41.50 per common unit. The all-cash transaction is valued at $10.3 billion enterprise value and $6.5 billion equity value. The acquisition price represents a 27.5% premium to Buckeye's closing unit price on May 9, 2019 and a 31.9% premium to Buckeye's volume-weighted average unit price since November 1, 2018, which is the last trading day prior to Buckeye's announcement of certain strategic actions. Buckeye's Board of Directors unanimously approved the proposed transaction with IFM. The closing of the merger will be subject to approval of a majority of the Buckeye unitholders, certain regulatory approvals and other customary closing conditions.
>
> Buckeye owns and operates one of the largest diversified networks of integrated midstream assets, including 6,000 miles of pipeline with over 100 delivery locations and 115 liquid petroleum products terminals with aggregate tank capacity of over 118 million barrels. Its network of marine terminals is located primarily in the East Coast and Gulf Coast regions of the United States, as well as in the Caribbean.

>IFM is a pioneer and leader in infrastructure investing on behalf of institutional investors globally, with a 23-year track record of success. IFM has $90 billion of assets under management, including $39.1 billion in infrastructure, which it manages on behalf of more than 370 institutional investors, and takes a long-term approach to investing, with no pre-determined time divestiture horizon. IFM targets core infrastructure in developed markets and currently has interests in 32 investments across North America, Australia and Europe, including several midstream assets.
>
>"This acquisition is aligned with IFM's focus on investing in high quality, essential infrastructure assets that underpin the economies in which they operate," said Julio Garcia, Head of Infrastructure, North America of IFM.
>
>"We are pleased to have the opportunity to bring the Buckeye business and management team under the IFM umbrella," said Jamie Cemm, Executive Director of IFM. "The proposed acquisition of Buckeye is a complementary addition to IFM's substantial investments in energy infrastructure across North America and globally. We look forward to supporting the continuing growth of the business."

**The Proxy Statement Contains Material Misstatements and Omissions**

32. Defendants filed a materially incomplete and misleading Proxy Statement with the SEC. The Proxy Statement misrepresents or omits material information that is necessary for the Company's unitholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.

33. The Proxy Statement fails to disclose material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Wells Fargo Securities, LLC ("Wells Fargo").

34. With respect to Wells Fargo's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the metric to which the perpetuity growth rates were applied to derive the terminal value; (ii) quantification of the terminal value calculated by Wells Fargo in the analysis; (iii) the implied terminal value multiples resulting from the analysis; and (iv)

quantification of the inputs and assumptions underlying the discount rates ranging from 7.84% to 8.34%.

35. With respect to Wells Fargo's *Discounted Distributions Analysis*, the Proxy Statement fails to disclose: (i) the metric to which the perpetuity growth rates were applied to derive the terminal value; (ii) quantification of the terminal value calculated by Wells Fargo in the analysis; and (iii) quantification of the specific inputs and assumptions underlying the cost of equity range of 9.80% to 10.30%.

36. When a banker's endorsement of the fairness of a transaction is touted to unitholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

37. The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by the Company's insiders.

38. The Proxy Statement fails to disclose whether any members of Buckeye management are expected to continue with the post-close company, the details of all employment and retention-related discussions and negotiations, including discussions and negotiations related to certain cash retention bonuses that the Company may grant to its employees, that occurred between IFM and Buckeye's executive officers or directors, including who participated in all such communications, when they occurred and their content.

39. The Proxy Statement further fails to disclose whether any of IFM's prior proposals or indications of interest mentioned management retention in the combined company.

40. This information is necessary for unitholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning

motivations that would prevent fiduciaries from acting solely in the best interests of the Company's unitholders.

41. The Proxy Statement also fails to disclose the potential conflicts of interest faced by the Company's additional financial advisor Intrepid Partners, LLC ("Intrepid") that advised the Company during the process leading up to the Merger Agreement.

42. For example, the Proxy Statement fails to disclose the amount of compensation Intrepid will receive in connection with its engagement, as well as the amount of Intrepid's compensation that is contingent upon consummation of the Proposed Transaction.

43. Further, the Proxy Statement fails to disclose whether Intrepid has performed past services for IFM, Buckeye, or their affiliates, as well as the timing and nature of such services and the amount of compensation received by Intrepid for such services.

44. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

45. The omission of this information renders the statements in the "Opinion of the Partnership's Financial Advisor," "Background of the Merger" and "Interests of the Partnership's Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

46. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's unitholders.

## CLAIMS FOR RELIEF

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act And SEC Rule 14a-9 Promulgated Thereunder

47.  Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

48.  The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, failed to state material facts necessary to make the statements therein not materially false or misleading. Buckeye is liable as the issuer of these statements.

49.  The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

50.  The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable unitholder would consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy Statement and in other information reasonably available to unitholders.

51.  By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

52.  Because of the false and misleading statements in the Proxy Statement, Plaintiff

and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

53. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

54. The Individual Defendants acted as controlling persons of Buckeye within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of Buckeye and participation in or awareness of the Company's operations or intimate knowledge of the statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

55. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

57. In addition, as the Proxy Statement sets forth at length, and as described herein,

the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

58. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Buckeye's unitholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Buckeye, and against defendants, as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Buckeye unitholders;

C. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: June 28, 2019  **O'KELLY ERNST & JOYCE, LLC**

By  */s/ Ryan M. Ernst*
Ryan M. Ernst (#4788)
901 N. Market St., Suite 1000
Wilmington, DE 19801
Tel.: (302) 778-4000
Email: rernst@oelegal.com

**OF COUNSEL:**

**BRAGAR EAGEL & SQUIRE, P.C.**
Melissa A. Fortunato
885 Third Avenue, Suite 3040
New York, New York 10022
Tel: (212) 308-5858
Fax: (212) 486-0462
Email: fortunato@bespc.com

*Attorneys for Plaintiff*